UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISIION

MICHAEL HALL,

                Plaintiff,

vs

FCA US LLC,

                Defendant.

Case No.
Hon.
Mag.

---

Megan Bonanni (P52079)
Pitt, McGehee, Palmer & Rivers, P.C.
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
(248) 398-9800
mbonanni@pittlawpc.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Michael Hall, by and through his attorneys, Pitt McGehee Palmer & Rivers, P.C., hereby complains against Defendant FCA US LLC ("The Company") and states as follows:

### INTRODUCTION

1.      This is a discrimination and retaliation action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 1981, ("Section 1981") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") M.C.L. § 37.2701, *et seq*.

2.     In this action, Plaintiff seeks legal damages to enforce his rights under Title VII, Section 1981 and ELCRA which prohibit discrimination, hostile work environment, and retaliation as alleged in this complaint.

## JURISDICTION, VENUE and PARTIES

3.     Plaintiff Hall, an African American male who resides in Southgate, Michigan.

4.     Defendant FCA operates its business in this judicial district. This Court has subject matter jurisdiction over Hall's Title VII, and Section 1981 claims pursuant to 28 U.S.C. § 1331 because the claims arise under federal law.

5.     This Court has supplemental jurisdiction over Hall's ELCRA claims because the ELCRA claims arise out of the same set of facts as Hall's federal claims, such that all claims form part of the same case or controversy.

6.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the Eastern District of Michigan and the events giving rise to this action occurred in the Eastern District of Michigan.

7.     Venue is proper in the Eastern District of Michigan, Southern Division, because the events giving rise to the action occurred in this district and division.

8.     Plaintiff has exhausted his administrative remedies by filing with the Equal Employment Opportunity Commission (EEOC).

9.     Plaintiff received a dismissal and right to sue notice from the EEOC and he timely files this action within 90 days of receipt of this notice.

## STATEMENT OF FACTS

10.    Hall is a resident of Southgate, Wayne County, Michigan.

11.    The Company is located and established in Wayne County.

12.    Hall began his employment with the Company on September 24, 2012 as a Unit Leader at the Trenton Engine Plant, reporting to Supervisor Mike Bryant.

13.    Throughout his employment, Supervisor Mike Bryant and Tim Litchard harassed Hall and other African Americans employees including but not limited to Daryl Graham(Unit Leader), James Sutton(Business Unit Leader), Dion Agee (hourly employee), William Alexander (hourly), Ron Warlaw (hourly), Dave Burton (hourly), Marquez Fields(hourly), Dionne Starks(hourly) often berating and subjecting them to unfair discipline.

14.    In November, 2012 Hall first complained to Human Resources Nick Webber about the discrimination that he was experiencing under the supervision of Bryant. Hall explained that Bryant was noticeably hostile towards him and even refused to look him in the eye. Hall specifically told Webber that Bryant was not treating his white counterparts with the same animosity.

15.    Throughout Hall's employment Bryant routinely addressed Hall and other African American employees with a variety of derogatory names, using profanity to describe them, such as lazy piece of sh**, stupid mother fu***er, and dumb.

16.    When talking about African American employees, including Hall, Bryant stated things such as "you have to keep an eye on them, you can't trust they will keep working if you turn your back for a minute so you have to make your presence felt, you have to strike fear in them.

17.    Bryant also threatened that he was going to tear their a**when the Plant Manager left for the day.

18.    Any time an African American employee had downtime on the line, Bryant was quick to question the legitimacy of the downtime, saying things such as  "you don't know your head from you're a**, you lazy mother fu****.

19.    Bryant did not treat the white supervisors or employees in the same demanding manner.

20.    In June of 2014, the Manufacturing Manager Mike Crawford similarly started publicly humiliating Hall, calling him "lazy", taking his lead from Bryant.

21.    Hall observed that under the supervision of Bryant, Tim Litchard and Mike Crawford, his African American peers were routinely singled out, verbally abused and degraded, creating a hostile environment.

22.    Hall observed supervisors such as Mike Bryant and Larry Chantres using the "N" word when talking about black hourly employees.

23.    On August 16, 2013, Hall's brother David Hall died as a result of a rare form of cancer.

24.    Despite the death in his family member, Bryant ordered Hall to come to work the next day.

25.    On August 17, 2013 Hall took a bereavement leave.

26.    On September 8, 2013 Hall revealed to Shawn Benson (Unit Leader) that the workplace harassment and the loss of his brother were causing a psychiatric break.

27.    On September 8, 2013 Hall was admitted to Samaritan Behavioral Center and placed on suicide watch.

28.    On September 12, 2013 Hall was released from Samaritan and instructed to report to McClaren's Oakbrook Center in Flint, MI.

29.    Plaintiff received treatment at McClaren on an outpatient basis until his return to work in December 2013.

30.     Plaintiff sought counseling at The Guidance Center (Adult and Family Services) where he was diagnosed with major depression.

31.     Immediately upon his return to work, Hall was assigned to work under Bryant.  Lamarcus Keels (Manufacturing Manager at the time) assured Hall that he will not be bothered by Bryant.

32.     In December, 2013 after he returned to work, Hall reported to HR's Webber that Bryant was harassing him because of his race.  Bryant was singling Plaintiff out in meetings along with other black supervisors, unfairly scrutinizing their downtime, cursing at the black supervisor Shawn Benson and Hall in a rage despite the fact that Maintenance Reports supported the actions taken by the Supervisors.  Plaintiff went out on stress leave because of Bryant harassing him.

33.     During the meeting, Webber informed Hall that he could not be transferred because there was no open position.

34.     In January, 2014, Hall met with HR Manager Reggier Gather and Webber.  Hall, who was visibly upset, expressed that based on his prior experiences and complaints about Bryant, Hall did not feel safe around him. Gather determined that Hall was not emotionally ready to return to work.

35.     Plaintiff next returned to work in February, 2014 and was assigned to work on the second shift for Mike Bryant and assured by Webber that Bryant wouldn't harass the Plaintiff again.

36.     In March of 2014, Bryant screamed in Hall's face because a robot was down, a fact that had nothing to do with Hall's work performance.

37.     In June 2014, Hall was approached by supervisor Daryl Graham and informed that Bryant had angrily confronted him and Team Leader William Alexander on second shift, both African American, after the line was down for thirty minutes, flew into a rage, and demanded to know if they are "trying to f*ck him in the a**", broke a chair with his foot and then threw a step ladder that nearly hit Rafael Kilgore (African American).

38.     Hall reported the incident to Webber.  Hall also reported that white hourly workers had made drawings, poking fun at the African American co-workers.  Webber asked Hall to look into what happened.

39.     At Hall's next shift, team leader William Alexander separately reported the incident to Hall, recounting the identical incident.   Hall immediately reported the incident to Union Representative Mike Piazza.  Piazza confirmed that Bryant had in fact acted in this hostile manner towards these African American employees and stated, "that's just Mike Bryant being Mike Bryant."

7

40.    Minutes later, Hall was called to HR where night shift HR Manager Lavonda Mitchell asked Hall if he told Piazza, "what's going to happen next time, will Bryant stab someone when the line goes down?"  Hall denied making the false statement.

41.    Minutes later, Hall was again called to HR, this time with Bryant present. Bryant was angry about Hall's report, confronted Hall in a hostile manner and then stated, "I know you were on your sick leave and went to the mental hospital ...what was it....... Samaritan Behavioral Center." ...so I don't want to say too much...."

42.    Bryant then boasted to Hall that both Mike Crawford and Reggie Gather informed him of the specifics about Hall's mental health treatment.

43.    Bryant was very angry about Hall's reporting of the incident involving these African American employees, stating "I know all about where you were but you are going to tell me what I want to know about what was said to Mike Piazza and we aren't leaving until we do."

44.    On June 14, 2014, Hall placed in Performance Improvement Plan (PIP).  The PIP contained 13 areas of improvement.

45.    On July 14, 2014, during the first meeting about his progress on the PIP, Hall was informed by HR that he was already successful in 10 of the 13 items.

8

46. In September 2014, during his session of PIP meeting, Hall was instructed to demonstrate additional information concerning Autonomous Maintenance. Hall immediately provided the requested information and even sent email demonstrating his improvement of all areas outlined in the PIP.

47. Management did not respond for months to confirm whether Hall had successfully completed the PIP.

48. In September, 2014, Bryant violently confronted Hall about a problem on the line. Hall repeatedly asks Bryant to stop yelling at him. Bryant orders Hall to get the f*** out of the plant.

49. Hall called Manufacturing Manager Tim Litchard and HR's Webber and left voicemails alerting them both to what happened. Litchard did not respond.

50. Bryant called security to escort Hall off the premises.

51. In October 2014, after a one month investigation, Hall was returned to work and transferred. Webber informed Hall that the investigation was taken over by corporate who ordered that Hall be reinstated.

52. After his reinstatement, Manufacturing Manager Tim Litchard refused to even acknowledge Hall's reports about how Bryant treated the African American employees in September, 2014.

53.    After his reinstatement, Hall repeatedly contacted HR about the fact that he was still on a PIP, despite having satisfied all of the terms months ago.

54.    It is not until February of 2015 that Hall was officially taken off the PIP.

55.    In March 2015, Hall observed as Litchard mocked the Quality Manager's Middle Eastern accent and celebrated the fact that HR was not there because he would be in "trouble."

56.    In March, 2015, Hall injured his knee outside of work, returning to work in June, 2015.

57.    In September, 2015, Litchard accused Hall of falsifying his doctor notes.

58.    In the months following his reinstatement, Hall observed that like Bryant, Litchard also treated African American employees much more harshly than their white counterparts, blaming them for issues on the line that were outside of the scope of their responsibilities or authority and yelling at them.

59.    As for Hall, Litchard was dismissive and hostile, even throwing a cup of coffee into the air that splashed on Hall.

60.    In September, 2015, Hall is placed on a second PIP, the terms of which outlined tasks that other Supervisors were not required to do as part of their overall job responsibilities.

61.    In October 12, 2015, Plaintiff was informed that Dawn Jennings Thompson who worked as an hourly employee in the Head line department, called Hall the "N" word.  Plaintiff reported the incident to Nick Webber.

62.    On November 1, 2015, Hall sent an email to a number of management employee, explaining that it had been 22 days without any response from management as to his complaint and further stating that the lack of support was stressful and causing a hostile environment

63.    On November 15, 2015, Hall met with HR's Richard Thomas and Webber about the Jennings-Thompson incident. Hall then met with Litchard and Antwone Porter where they admitted that HR and Management dropped the ball.

64.    In January, 2016, Hall presented all of the documentation that his has compiled to support that his satisfaction of the PIP as contained in professionally organized binders.  Antwone Porter reviewed the materials and advised Hall that the PIP response looked great and further stated that as an African American employee, Hall had to do even more to prove satisfaction of the PIP to Litchard.  Porter reviewed the information contained in the binder

and advised Hall that he was confident that Hall would be successful in getting past this PIP.

65.    In March, 2016, Hall is terminated, purportedly for failing to meet the terms of the PIP.

**COUNT I**
**VIOLATION OF TITLE VII**
**DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT**

66.    Hall incorporates by reference all the above allegations as if stated in full herein.

67.    At all relevant times, Hall was an employee and the Company his employer within the meaning of Title VII.

68.    Under Title VII, the Company was obligated to refrain from discriminating against, harassing, and subjecting Hall to a hostile work environment because of his race.

69.    In violation of this statutory obligation, the Company discriminated against Hall by terminating him because of his race and allowing him to be subjected to harassing, demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

70.    In violation of this statutory obligation, the Company created and maintained a hostile work environment because of Hall's race when it allowed,

condoned, and permitted employees to harass, demean, intimidate, threaten, and abuse Hall because of his race as set forth above.

71.    At all times, The Company failed to provide a work environment free of racial discrimination in that The Company allowed employees to use racial slurs, name calling, intimidation, unfair treatment, threats, intimidation, ridicule, and insults, and to interfere with Hall's work performance because of his race as set forth above.

72.    This hostile work environment was unwelcome, severe, and pervasive, both to Hall and to any reasonable employee.

73.    At all times, The Company was aware of the racially hostile work environment, specifically, of the discrimination and harassment Hall suffered, yet declined to intervene or remedy it.

74.    The Company had a statutory duty not to discriminate against Hall because of his race and to provide a work environment free from harassment.

75.    In violation of this statutory duty, The Company singled out Hall for adverse treatment due to his race and failed to provide a non-hostile work environment.

76.    As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall

has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

77.    The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

     A.    An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

     B.    An order awarding punitive damages;

     C.    An order requiring The Company to correct the hostile work environment existing at the shop;

     D.    An order reinstating him or providing front pay in lieu of reinstatement;

     E.    An order awarding him statutory attorney fees and reimbursement of litigation costs.

     F.    An order awarding him such other relief the court deems just and equitable.

## COUNT II
## VIOLATION OF TITLE VII
## RETALIATION

78.    Hall incorporates by reference all the above allegations as if stated in full herein.

79.    At all times, The Company was aware of the racially hostile work environment and, specifically, of the discrimination and harassment Hall suffered as set forth above, yet declined to intervene or remedy it.

80.    The Company management was told of the discrimination and harassment Hall suffered by Hall.

81.    Under Title VII, the Company was obligated to refrain from retaliating against Hall because of complaints regarding race discrimination and from creating a retaliatory hostile work environment because of complaints of race discrimination.

82.    Under Title VII, the Company was obligated to refrain from retaliating against Hall for opposing discrimination or for the opposition of others to the discrimination.

83.    In violation of this statutory obligation, the Company retaliated against Hall because of reports of race discrimination and opposition of race discrimination by allowing management to maintain the harassment, discrimination, and hostile work environment, by condoning the harassing behavior of employees, and by terminating Hall.

84.    In violation of this statutory obligation, the Company created and maintained a retaliatory hostile work environment because of the complaints of discrimination when it allowed management to engage in harassing,

demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

85.    As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

86.    The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

    A.    An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

    B.    An order awarding punitive damages;

    C.    An order requiring The Company to correct the hostile work environment existing at the Plant;

    D.    An order reinstating him or providing front pay in lieu of reinstatement;

    E.    An order awarding him statutory attorney fees and reimbursement of litigation costs.

    F.    An order awarding him such other relief the court deems just and equitable.

## COUNT III
## VIOLATION OF SECTION 1981
## DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT

87.    Hall incorporates by reference all the above allegations as if stated in full herein.

88.    Under Section 1981, the Company was obligated to refrain from discriminating against, harassing, and subjecting Hall to a hostile work environment because of his race.

89.    In violation of this statutory obligation, the Company discriminated against Hall by terminating him because of his race and allowing him to be subjected to harassing, demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

90.    In violation of this statutory obligation, the Company created and maintained a hostile work environment because of Hall's race when it allowed, condoned, and permitted employees to harass, demean, intimidate, threaten, and abuse Hall because of his race as set forth above.

91.    At all times, The Company failed to provide a work environment free of racial discrimination in that The Company allowed employees to use racial slurs, name calling, intimidation, threats, intimidation, ridicule, and insults, and to interfere with Hall's work performance because of his race as set forth above.

17

92.    This hostile work environment was unwelcome, severe, and pervasive, both to Hall and to any reasonable employee.

93.    At all times, The Company was aware of the racially hostile work environment and, specifically, of the discrimination and harassment Hall and others suffered, yet declined to intervene or remedy it.

94.    The Company had a statutory duty not to discriminate against Hall because of his race and to provide a work environment free from harassment.

95.    In violation of this statutory duty, The Company singled out Hall for adverse treatment due to his race and failed to provide a non-hostile work environment.

96.    As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

97.    The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

> A.    An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

> B.    An order awarding punitive damages;

C.     An order requiring The Company to correct the hostile work environment existing at the shop;

D.     An order reinstating him or providing front pay in lieu of reinstatement;

E.     An order awarding him statutory attorney fees and reimbursement of litigation costs.

F.     An order awarding him such other relief the court deems just and equitable.

## COUNT IV
## VIOLATION OF SECTION 1981
## RETALIATION

98.     Hall incorporates by reference all the above allegations as if stated in full herein.

99.     At all times, The Company was aware of the racially hostile work environment in the shop and, specifically, of the discrimination and harassment Hall suffered as set forth above, yet declined to intervene or remedy it.

100.    The Company's management was told of the discrimination and harassment Hall and others.

101.    Under Section 1981, the Company was obligated to refrain from retaliating against Hall because of complaints regarding race discrimination

and from creating a retaliatory hostile work environment because of complaints of race discrimination.

102. Under Section 1981, the Company was obligated to refrain from retaliating against Hall for opposing discrimination or for the opposition of others to the discrimination.

103. In violation of this statutory obligation, the Company retaliated against Hall because of reports of race discrimination and opposition of race discrimination by allowing employees to maintain the harassment, discrimination, and hostile work environment, by condoning the harassing behavior of employees, and by terminating Hall.

104. In violation of this statutory obligation, the Company created and maintained a retaliatory hostile work environment because of the complaints of discrimination when it allowed co-workers to engage in harassing, demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

105. As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

106. The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

A.     An order awarding compensatory damages including but not limited        to back pay, front pay, and emotional damages;

B.     An order awarding punitive damages;

C.     An order requiring The Company to correct the hostile work environment existing at the shop;

D.     An order reinstating him or providing front pay in lieu of reinstatement;

E.     An order awarding him statutory attorney fees and reimbursement of litigation costs.

F.     An order awarding him such other relief the court deems just and equitable.

**COUNT V**
**VIOLATION OF ELCRA**
**DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT**

107.   Hall incorporates by reference all the above allegations as if stated in full herein.

108.   Under the ELCRA, The Company was obligated to refrain from discriminating against, harassing, and subjecting Hall to a hostile work environment because of his race.

109.   In violation of this statutory obligation, the Company discriminated against Hall by terminating him because of his race and allowing him to be subjected to harassing, demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

110.   In violation of this statutory obligation, the Company created and maintained a hostile work environment because of Hall's race when it allowed, condoned, and permitted employees to harass, demean, intimidate, threaten, and abuse Hall because of his race as set forth above.

111.   At all times, The Company  failed to provide a work environment free of racial discrimination in that The Company  allowed employees to use racial slurs, name calling, intimidation, ridicule, and insults, and to interfere with Hall's work performance because of his race as set forth above.

112.   This hostile work environment was unwelcome, severe, and pervasive, both to Hall and to any reasonable employee.

113.   At all times, The Company was aware of the racially hostile work environment in the shop and, specifically, of the discrimination and harassment Hall suffered, yet declined to intervene or remedy it.

22

114.   The Company had a statutory duty not to discriminate against Hall because of his race and to provide a work environment free from harassment.

115.   In violation of this statutory duty, The Company singled out Hall for adverse treatment due to his race and failed to provide a non-hostile work environment.

116.   As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

117.   The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

      A.     An order awarding compensatory damages including but not limited        to back pay, front pay, and emotional damages;

      B.     An order awarding punitive damages;

      C.     An order requiring The Company  to correct the hostile work environment existing at the shop;

      D.     An order reinstating him or providing front pay in lieu of reinstatement;

E.      An order awarding him statutory attorney fees and reimbursement of litigation costs.

F.      An order awarding him such other relief the court deems just and equitable.

## COUNT VI
## VIOLATION OF ELCRA
## RETALIATION

118.   Hall incorporates by reference all the above allegations as if stated in full herein.

119.   At all times, The Company was aware of the racially hostile work environment in the shop and, specifically, of the discrimination and harassment Hall suffered as set forth above, yet declined to intervene or remedy it.

120.   The Company management was told of the discrimination and harassment Hall and others suffered.

121.   Under the ELCRA, The Company was obligated to refrain from retaliating against Hall because of complaints regarding race discrimination and from creating a retaliatory hostile work environment because of complaints of race discrimination.

122.   Under the ELCRA, the Company was obligated to refrain from retaliating against Hall for opposing discrimination or for the opposition of others to the discrimination.

123.   In violation of this statutory obligation, the Company retaliated against Hall because of reports of race discrimination and opposition of race discrimination by allowing co-workers to maintain the harassment, discrimination, and hostile work environment, by condoning the harassing behavior of employees, and by terminating Hall.

124.   In violation of this statutory obligation, the Company created and maintained a retaliatory hostile work environment because of the complaints of discrimination when it allowed co-workers to engage in harassing, demeaning, intimidating, threatening, and abusive behavior because of his race as set forth above.

125.   As a direct result of the violation of Hall's civil rights as alleged above, Hall has and will continue to experience lost earnings and benefits; Hall has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

126.   The Company's conduct was willful and malicious entitling Hall to punitive damages.

Accordingly, Hall requests the following relief:

A.   An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

B.   An order awarding punitive damages;

C.      An order requiring The Company  to correct the hostile work environment existing at the shop;

D.      An order reinstating him or providing front pay in lieu of reinstatement;

E.      An order awarding him statutory attorney fees and reimbursement of litigation costs.

F.      An order awarding him such other relief the court deems just and equitable.

By: */s/ Megan A. Bonanni P52079*
Megan Bonanni (P52079)
Pitt, McGehee, Palmer & Rivers, P.C.
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
(248) 398-9800
mbonanni@pittlawpc.com

Dated: November 8, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISIION

MICHAEL HALL,

Case No.

     Plaintiff,

Hon.

Mag.

vs

FCA US LLC,

     Defendant.

_____

Megan Bonanni (P52079)
Pitt, McGehee, Palmer & Rivers, P.C.
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
(248) 398-9800
mbonanni@pittlawpc.com

_____

**JURY DEMAND**

     Plaintiff hereby demands a trial by jury of all issues in the within cause of

action.

          By: _/s/ Megan A. Bonanni P52079_
          Megan Bonanni (P52079)
          Pitt, McGehee, Palmer & Rivers, P.C.
          Attorney for Plaintiff
          117 W. Fourth Street, Suite 200
          Royal Oak, MI  48067
          (248) 398-9800
          mbonanni@pittlawpc.com

Dated: November 8, 2016